LILLY, administrator, *vs.* GRIFFIN, and *vice versa.*

1. The jury may take notes of calculations submitted by either plaintiff or defendant, or of what is said or claimed by counsel for either side in argument. The jury cannot be required to do this, but may do so, if it be not attended with delay or undue consumption of time.

(*a.*) It made no difference that the calculation from which counsel read was that prepared by the ordinary when the case was on trial before him; especially, when this was not intimated to the jury by counsel using it, but was brought to their attention by counsel for the opposite party.

2. While an administrator is authorized to provide competent legal counsel for the estate he represents, according to its exigencies, he cannot charge the estate with the fees of counsel retained to defend a suit brought against him to recover or to secure the trust fund, whenever it appears that the complainant is justifiable in bringing the suit.

(*a.*) There is reason to believe that the result reached by the jury includes an allowance of counsel fees to the defendant. Were it otherwise, the verdict would not be void for failing to cover all the issues presented, no special issue as to such fees having been made or submitted to the jury by the pleadings.

3. The accounts in this case do not seem to have been complicated; there was no dispute as to the amount of any of the items in question; the entire controversy was as to the propriety of the items themselves, and to whom the money embraced in them belonged. The motion to refer the case to a master or auditor was made too late, having been made after the case had been called, both parties had announced ready, the case had been set down for trial, and called at the time when set. Besides, a reference to the master was in the discretion of the court, and he did not abuse his discretion in refusing it; nor was the defendant injured thereby.

4. The exception as to turning over a note given for the purchase of a part of the land devised by the will, and which constituted a part of the effects of the estate, was properly abandoned on the trial.

5. The testatrix had four children; two by a former husband, and two by her second husband. They were known respectively as the S children and the G. children. The third item of her will directed that her land and other property be kept together and rented out or leased for a term of five years, and that the proceeds should be equally divided between the G. children, to be used in their education, " and at the end of five years—or if my executor thinks best for the estate, [he] may continue the rent or lease under

the same provisions one, two or three years—then I desire it sold to the best advantage, and the proceeds to be equally divided" among the four children. In case of the death of either of the S. children, the survivor was to have all the share of such decedent; in case of the death of either of the G. children, his share was to go to the survivor; in case of the death of both of the G. children before either became of age, all of their share was to go to the S. children; in case of the death of all of the children before becoming of age, the estate was to go to the brother and sister of the testatrix or the survivor of them. The survivor of the G. children, on attaining his majority, cited the representative of the estate for a settlement:

*Held,* that the legacy contained in the third item of the will was specific as to the purposes for which it was made, and was absolute and unconditional, save as to the limitations imposed in the item itself. The intention of the testatrix was to dispose of her entire estate by will, and also to provide for any remainder that might arise in consequence of the death of either of the principal legatees. In case one of the G. children died under age, the other was to take all of his share, including the five years' rent.

6. One hundred acres of the land charged with the five years' rent, under the above will, were sold before the expiration of that time for the payment of the debts of the testatrix; and after accomplishing that purpose, there was a considerable surplus left in the hands of the executor. The interest of this surplus was given to the plaintiff as a compensation for the rent which was lost by reason of the sale. In view of the rule requiring legacies of the same character to contribute ratably to the payment of debts where there is a deficiency of assets primarily liable (Code, §§2467, 2534), this was as liberal a measure as the defendant could have asked.

7. The returns of the defendant's predecessor in the trust were admissible to show what effects belonging to the estate were turned over by him to the defendant upon final settlement between them, and to show what part of the rents specially bequeathed to the plaintiff and his brother had gone into the general estate, either for the payment of debts or other purposes, and which the plaintiff was entitled, upon this settlement, to have returned to him.

8. The judgment in the first case being affirmed, leave is granted to plaintiff in error to withdraw the bill of exceptions in the second case, and both are affirmed.

October 16, 1883.

Practice in Superior Court. Administrators and Executors. Attorney and Client. Auditor. Master in Chancery. Wills. Estates. Evidence. Practice in Supreme

Court.    Before Judge SIMMONS.    Houston Superior Court. April Term, 1883.

The facts stated in the fifth head-note and the decision report the case.

DUNCAN & MILLER, for Lilly, administrator.

W. C. WINSLOW; A. C. RILEY; B. M. DAVIS, contra.

HALL, Justice.

Mrs. Mary A. E. Griffin, on the 17th day of June, 1874, executed her last will and testament, and died thereafter. The will was proved at the following July term of the court of ordinary of Houston county, and letters testamentary were issued to D. N. Austin, the executor therein named.    The first item of the will directed the payment of debts; the second gave a specific legacy of jewelry, silver ware, furniture, etc., to Elizabeth Orr and Reuben H. Slappy, testatrix's children by her first husband; the third item directed her land, consisting of seven hundred and fifty-eight acres, and her other property, to be kept together, and rented out or leased for a term of five years, and the proceeds to be equally divided between her sons, Joseph M. and Julian D. Griffin, (children by her last husband), to be used in their education.    At the end of five years, or if the executor thought "best for the estate," he was authorized to rent, or lease the same "under the same provisions," one, two or three years; then she desired it sold to the best advantage, and the proceeds to be equally divided between her four children, Reuben H. and Elizabeth Orr Slappy, and Joseph M. and Julian D. Griffin.    In case either of her Slappy children died, then the survivor was to have the share of the one so dying; in case either of the Griffin children died, the survivor was to have his share; but in case both of the latter children died before either attained his majority, then their share was to go to the

Slappy children, or the survivor of them; but in case both sets of children died before attaining majority, then all the estate was to go to the brother and sister of testatrix, or the survivor of them. This is the entire will, except the item appointing Austin executor. He qualified and acted as executor until August, 1877, when he resigned the trust, and was succeeded therein by J. O. Lilly. During Austin's administration of the estate, he sold, by order of the court of ordinary, one hundred acres of the body of testatrix's land. This sale was made in 1875, and from it he realized the sum of ——— dollars. He paid testatrix's debts, but furnished only a small sum towards the support and education of the Griffin children. So much of the sum appropriated by the will to this purpose as was not used in payment of debts, etc., was turned over, with the balance of the estate, to his successor in office. When Joseph M. Griffin attained his majority, (his brother Julian D. having died during minority,) ne petitioned the court of ordinary to cite the administrator with the will annexed to a settlement. In conformity to the prayer of this petition, citation issued and was served. Upon the hearing of the cause, judgment was awarded against the administrator with the will annexed, from that judgment an appeal was taken to the superior court; and upon the trial of the case in that court, the plaintiff had a verdict in his favor, upon which judgment was rendered. The defendant made a motion to set aside this verdict, and to have a new trial awarded him, upon the following grounds:

(1.) Because the court erred in refusing, on motion of defendant's counsel, to reject the returns of D. N. Austin, the executor, and admitting the same in evidence when tendered.

(2.) In allowing plaintiff's counsel, over objection of defendant's counsel, in arguing the case, to read to the jury extracts, figures and calculations, from a paper in his hand, which he admitted, when interrupted, and in response to an inquiry made by defendant's counsel, was the

calculation made by the ordinary in this case, but which the said plaintiff's counsel did not offer or insist upon as evidence in the case, and which the jury was instructed by the court not to use as such evidence. .

(3.) The court erred in charging the jury that, under the facts, the proceeds of the five years' rents, or that part thereof not received by plaintiff and his brother, did not lapse to the general estate, on the failure of said legatees to receive and use it as provided in the will.

(4.) In charging that the plaintiff inherited the share of his brother Julian D., in the proceeds of the five years' rents, on his decease intestate, to the exclusion of the two Slappy children, and that if said Julian D. died intestate in the state of Tennessee, and the laws of that state provided a different rule of inheritance, it devolved on defendant, and not on plaintiff, to show this.

(5.) In charging that if Austin, the executor, applied any money received from the five years' rent to the payment of testatrix's debts, the plaintiff would be entitled to recover from defendant such sums, with interest, to be paid out of the general estate.

(6.) In charging that if Austin, the executor, sold 100 acres of the land to pay the debts of the estate, and it brought more than was needed for that purpose, that plaintiff would be entitled to interest on the overplus, from the time it came into defendant's hands, up to the expiration of the five years provided for in the will.

(7.) Because the jury failed in their verdict to allow defendant any sum for his necessary counsel fees, although he had introduced testimony as to the service rendered, and the value thereof.

(8.) Because the verdict is contrary to law, evidence, etc.,—covering all the usual grounds.

Prior to the hearing, the motion was amended by adding the following grounds:

(9.) Because the court erred in refusing to refer the

cause to an auditor or master, to examine into and report upon the same, although a motion for such reference was duly made by defendant's counsel, for the reason that the same involved complicated matters of account, and many doubtful questions both of law and fact.

(10.) There was error in charging that the jury could find one-half of the James note, given for the "home place," to be the property of plaintiff.

(11.) There was error in allowing, over defendant's objection, the jury to copy extracts from the ordinary's calculation as read to them by plaintiff's counsel from said calculation, as described in second ground of the motion.

Upon the hearing of this motion, the same was over-ruled, and the new trial asked for was refused. To this the defendant excepted, and he brings the case here upon writ of error.

Before the hearing of this motion, the plaintiff also took a bill of exceptions to various rulings and charges of the court, which is also here upon a writ of error. He wishes this to be treated as a cross-bill of exceptions, and does not insist upon a decision of the questions it raises, unless there is a reversal of the judgment of the lower court upon the defendant's bill of exceptions and writ of error.

1. The practice of allowing the jury to take notes of calculations submitted by either of the litigants, or of what is "said" or "claimed" by either in argument, is no longer an open question in this court. In *Tift vs. Towns*, 63 *Ga.*, 237, 242, the point was ruled directly. Bleckley, J., delivering the opinion of the court, said: "It was not error to abstain from preventing one of the jurors from taking notes of what the plaintiff's counsel claimed, though the notes were taken at the request of the counsel during the argument, and while he read from a calculation which he had prepared. Of course this practice would be inadmissible, if attended with delay or undue consumption of time. We take it for granted it was not so attended in this instance. There is no power to compel any juror to

comply with such request, and the counsel of either party is free to make it." In the present case, we cannot see that it makes any difference that the calculation read from was that prepared by the ordinary, when the case was on trial before him, especially when this fact was not intimated to the jury by the counsel using it, but was brought to their notice by the counsel of the opposite party; but for his announcement, it is probable that they never would have known the source from which it emanated.

2. It is not apparent to us that the defendant was entitled to have the counsel fees claimed by him allowed, or that, in fact, the verdict of the jury did not find them for him.

The petition for citation calling upon this administrator to settle, charges upon him neglect of duty and waste of the estate, and the evidence in the case establishes very clearly the first part of the charge, if not the entire charge. While it is true that an administrator is authorized to provide competent legal counsel for the estate he represents, according to its exigencies, Code §2543, yet he cannot charge the estate with the fees of counsel retained to defend a suit brought against him to recover or to secure the trust fund, whenever it appears that the complainant is justifiable in bringing the suit. 32 *Ga.*, 31; 50 *Ib.*. 10, 33.

Apart from this, however, there is reason to believe that the result reached by the jury includes the allowance of counsel fees to the defendant; the finding, upon the evidence in the case and the rules given in charge, is somewhat less than it should have been, even with the fees included. If they had not been included, we would not deem the verdict void for failing, as is insisted, to cover all the issues presented. There was no special issue made or submitted to the jury by the pleadings in the case to which they were called upon to respond. *Gunn vs. Barrett,* 69 *Ga.*, 689, is directly upon the point, and is decisive of this exception.

3. It seems that when the cause was called on the dock-

et, both parties announced themselves ready, and, under the practice of the court, it was then set to be heard on a future day. On this last-named day, before the trial commenced, but after the case was called, the defendant moved that it be referred to a master or auditor to take the accounts between the parties, and to make his report at a subsequent term of the court, but the plaintiff objecting to the reference, the motion was overruled; and to this, exception is taken. The accounts do not seem to have been complicated; there was no dispute as to the amount of any of the items in question; the entire controversy was as to the items themselves, and to whom the money embraced in them belonged. The motion to refer was made too late; it should have been insisted upon before the case was set for trial; besides, it was in the discretion of the court to grant or refuse it. There was no abuse of this discretion in refusing it. The event shows that the defendant was not injured by the refusal, and we are satisfied that the estate was benefited by saving to it the cost of the reference. Code, §3139; 47 *Ga.*, 586; 57 *Ib.*, 448; 59 *Ib.*, 47.

4. The exception as to turning over James's note, given for the purchase of a part of the land devised by the will, and which constituted a part of the effects of the estate, was properly abandoned on the trial.

5. The other grounds of the motion for a new trial depend upon the construction given to the disputed clauses of the will, and these relate principally to the legacy disposing of the rents, and the provisions made for the devolution of this property, in case of the death of one of the legatees.

We are satisfied that this legacy was specific as to the purpose for which it was made, and was absolute and unconditional, save as to the limitations imposed by the item of the will containing it, upon all the property, including this thereby bequeathed. 1 Roper Leg., 194, 198 marg. p., as to specific purpose of legacy. As to absolute char-

acter of the same, *Ib.*, 749, 766. As to vesting of legacy, although for a specific purpose, and the time when payable, *Ib.*, 640, 641.

The testatrix evidently intended to dispose of her entire estate by her will, and also to provide for any remainder that might arise in consequence of the death of either one of her principal legatees.

She intended that the survivor of her Griffin children, where one died under age, should take not a portion merely, but all the property bequeathed to such deceased child. This is evident, when we look to the clause or item providing for all her children, and specifying how the property shall devolve in certain contingencies. She gives the Griffin children five years' rent, and then gives to each of them, and in close connection therewith, a fourth interest in the balance of the property included in this item, and provides that in case of the death of either of the Griffin children under the age of twenty-one years, then the surviving brother shall have "all" the deceased brother's "share." There was no intestacy as to the deceased Griffin's share in this legacy of the five years' rent, any more than the balance of the legacy to him; the plaintiff took it all under the provisions of his mother's will; and this view of the matter dispenses with any consideration of the question as to whether this portion of the legacy to Julian D. Griffin passed under the statute of distributions of the state of Tennessee, where he died, or under the statute of distributions of this state.

6. One hundred acres of the land charged with the five years' rent were sold before the expiration of that time, for the payment of testatrix's debts, and after accomplishing that purpose, there was a considerable surplus left in the hands of the executor. The interest of this surplus was given to plaintiff as a compensation for the rent which was lost by reason of the sale. In view of the rule requiring legacies of the same character to contribute ratably to the payment of debts, where there is a deficiency of assets

primarily liable, (Code, §§2467, 2534), we think this was quite as liberal a measure to the defendant as could have been asked.   Indeed, we do not see that the other legatees in the will, having identical legacies, contributed to the same proportion that he did.   To the full value of the rent the plaintiff was entitled, the contribution was ratable as to the *corpus* sold, not so, however, as to the rent charge upon it.   The defendant surely cannot complain that the allowance made by the court was too liberal to him.   By it he is benefited rather than injured.

7. The returns of the defendant's predecessor in the trust were most clearly admissible, to show what effects belonging to the estate were turned over by him to the defendant, upon the final settlement with him, and to show what part of the rents specifically bequeathed to the plaintiff and his brother, had gone into the general estate, either for the payment of debts or other purposes, and which the plaintiff was, upon this settlement, entitled to have returned to him.

8. In the case of Lilly, adm'r, etc., plaintiff in error, *vs.* Griffin, defendant in error, there is no error of which Lilly can complain; and as Griffin does not desire to press his bill of exceptions in case the judgment in the former case is affirmed, we have not considered it, and leave is given him to withdraw it.   The result of which is that the judgment of the court below, in both writs of error, is affirmed.

Judgment affirmed.