### 69155. WILSON v. CHILDERS et al.
(329 SE2d 503)

BENHAM, Judge.
 Plaintiff-appellant was a passenger on a motorcycle which collided with an automobile driven by defendant-appellee Childers. A jury trial resulted in a verdict in favor of Childers, and judgment was accordingly entered. This appeal followed.
 1. From the evidence adduced at trial the jury was authorized to find that defendant Childers had proceeded into an intersection after stopping, looking both ways, and seeing no traffic. However, the car stalled in the middle of the intersection. While Childers attempted to restart the car, he watched another vehicle approach his stalled car and safely navigate the intersection. Two to three minutes after he had begun his efforts to restart his auto, the motorcycle carrying appellant entered the intersection and collided with the stationary car. The motorcycle operator testified that he and appellant had been drinking beer and playing pool prior to the accident; that he saw appellee's car pull up to the stop sign at the intersection, stop, proceed into the intersection, and stall; and that he unsuccessfully attempted to avoid the collision by laying the motorcycle down. The motorcyclist also agreed that one can see 300 to 400 yards down the road from the intersection where the accident occurred. When construed with every inference and presumption in favor of upholding the verdict, the above-summarized evidence was sufficient to support the jury verdict in favor of defendant Childers. *Felton v. Mercer*, 149 Ga. App. 358 (1) (254 SE2d 398) (1979).
 2. After appellant filed suit against appellee Childers, Childers filed a third-party complaint in which he named as third-party defendant Stanley Grabanski, the driver of the motorcycle. During the

presentation of his case, the third-party plaintiff called the third-party defendant to the stand for purposes of cross-examination. Appellant's objection to the procedure was overruled, and he now enumerates that ruling as error.

OCGA § 24-9-81 permits a party to make an opposite party a witness for cross-examination purposes. When appellee filed the third-party complaint against Grabanski, appellee and Grabanski became opposing parties, each entitled to take advantage of the privileges accorded him under OCGA § 24-9-81. See *Ranger Constr. Co. v. Robertshaw Controls Co.*, 166 Ga. App. 679 (2) (305 SE2d 361) (1983). Cf. *Latex Filler &c. Co. v. Chapman*, 139 Ga. App. 382 (228 SE2d 312) (1976). There was no error in permitting appellee to call the third-party defendant for purposes of cross-examination.

3. An orthopedist who served as a consulting physician during appellant's hospitalization testified by deposition at trial. He was given a certified copy of the hospital laboratory report containing the results of certain tests run on appellant and was asked if appellant's blood alcohol level was discernible from the report. The physician responded that the hospital report reflected a "markedly elevated" blood alcohol level of 220 milligrams percent. The hospital report itself was subsequently tendered and admitted into evidence. Appellant argues on appeal that the doctor's testimony concerning the lab report was irrelevant hearsay and not based on facts in evidence, and that the lab report itself was inadmissible hearsay.

Appellant's contention that the physician's testimony was an opinion based upon facts not in evidence was waived because that objection was not made at the taking of the deposition or at trial. Failure to raise the objection in the trial court provides no basis for consideration by this court. *Hopkins v. City of Philadelphia*, 155 Ga. App. 534 (3) (271 SE2d 672) (1980).

The physician's testimony concerning the laboratory report was not hearsay. "Testimony which depends on a laboratory report is inadmissible unless the report is admissible as a business record or the facts relied on therein are otherwise proved. [Cit.]" *Buffalo Cab Co. v. Gurley*, 134 Ga. App. 167 (1) (213 SE2d 545) (1975). As will be seen infra, the report used by the physician/witness was properly admitted as a business record. Furthermore, the expert witness used the report only to acquire the result of one test — the 220 milligram percent reading. That part of his testimony which could be labeled opinion (that appellant had consumed "some alcohol" and that the reading reflected a "markedly elevated" blood alcohol level) were opinions of an expert available for cross-examination. Thus, the testimony was not hearsay. Nor was it irrelevant. Appellant had earlier testified as an eyewitness to the collision and had admitted consuming alcohol immediately before the event. His ability to perceive was an impor-

tant issue, and the physician's testimony confirmed the fact that appellant had alcohol in his bloodstream.

4. The hospital's acting custodian certified that the lab report admitted into evidence was a true and correct copy of the original record. In light of this certification, it was not necessary to offer the testimony of the medical personnel who performed the various laboratory tests and prepared the report as a foundation for admitting the report. OCGA § 24-7-8. *Venenga v. State*, 163 Ga. App. 161 (3) (293 SE2d 553) (1982).

5. After appellee's closing argument, but prior to his own, appellant's counsel asked that the jurors be provided with note pads. He now cites the denial of his request as reversible error.

While the taking of notes by jurors during a trial is not considered to be error, in the absence of special circumstances, the matter is left to the discretion of the trial court. *Post-Tensioned Constr., Inc. v. VSL Corp.*, 143 Ga. App. 148 (1) (237 SE2d 618) (1977); *White v. State*, 137 Ga. App. 9 (1) (223 SE2d 24) (1975). In the case at bar, the trial court exercised its discretion, and we cannot find any abuse of that discretion. *Tift v. Towns*, 63 Ga. 237 (4) (1879), and *Simmons Lumber Co. v. Toccoa Furniture Co.*, 26 Ga. App. 758 (3) (107 SE 340) (1921), cited by appellant, do not call for a different result inasmuch as they allow for jury note-taking during argument upon request, but they do not mandate such action.

6. Appellant takes issue with the trial court's decision to instruct the jury on the law of emergency. Appellant maintains that any need for the charge was vitiated by appellee's testimony that he did not see the motorcycle as it approached his stalled car. However, appellee did testify as to his awareness of the approach of another vehicle while his car was stalled in the middle of the intersection.

"The doctrine of emergency refers to those acts which occur immediately following the apprehension of the danger or crisis and before there is time for careful consideration or reflection. [Cit.]" *Barlow v. Veber*, 169 Ga. App. 65 (1) (311 SE2d 501) (1983). While appellee may not have been aware of the specific danger presented by the approaching motorcycle, he had apprehended the peril of his situation before the arrival of the motorcycle, as is evidenced by his testimony that he watched the first vehicle that approached the intersection after his car stalled and made efforts to restart the automobile. "Whether an emergency existed or not, that issue, like all questions of diligence, negligence, contributory negligence and proximate cause except in plain and indisputable cases, was a question for determination by the jury. [Cits.] Under the evidence presented at trial, we conclude that this issue was properly submitted to the jury. [Cits.] Accordingly, this enumeration of error is without merit." *Federal Ins. Co. v. Pascoe Steel Corp.*, 161 Ga. App. 204, 206 (288 SE2d 267) (1982).

7. In light of the dearth of reversible error and the jury verdict in favor of appellee, the denial of appellant's motion to strike appellee's third-party complaint is moot. See *Hyde v. Klar*, 168 Ga. App. 64 (308 SE2d 190) (1983).

*Judgment affirmed. Banke, C. J., and Pope, J., concur.*

DECIDED JANUARY 29, 1985 —
REHEARING DENIED MARCH 27, 1985 —

*Lester Z. Dozier, Jr.*, for appellant.
*Thomas C. James III, William E. Mull*, for appellees.