58631. JACKSON et al. v. MEADOWS et al.

DEEN, Chief Judge.

The plaintiff appellant, according to undisputed evidence, went to the defendant Meadows, owner of a Chevrolet dealership, Meadows Motors, Inc. and ordered a Limited Edition Corvette Indianapolis "500" Pace Car, the price of which was at the time unknown to both parties. Meadows ordered the vehicle from the manufacturer on a form showing Gary Jackson as the customer and, when it arrived, prepared an invoice to Jackson. The deal fell through because Jackson insists that the contract between the parties contained a provision that the price would be $150 over cost (later ascertained as $11,084.98) whereas Meadows swears that price was not discussed. Meadows moved for and was granted summary judgment in an action for specific performance and damages. *Held:*

1. Code § 109A-2—201 (1) provides that contracts for the sale of goods of $500 or over are not enforceable absent a writing signed by the party against whom enforcement is sought "sufficient to indicate that a contract for sale has

been made between the parties." Jackson, the intended purchaser, could produce only Meadows' order form to the manufacturer and an invoice to himself. An unsigned invoice is not a writing in confirmation of the contract. *Evans Implement Co. v. Thomas Indus., Inc.*, 117 Ga. App. 279 (160 SE2d 462) (1968). Neither do we find the order form sent by Meadows to the manufacturer to be a contract between Meadows and Jackson even though it designated Jackson to the manufacturer as the intended customer.

2. The contract itself, if otherwise sufficient, need not show that there has been an agreement on price. Code § 109A-2—305 (1). Cf. *First Nat. Bank &c. Co. v. Olivetti Corp.*, 130 Ga. App. 896, 899 (204 SE2d 781) (1974). Professor Karl Llewellyn, prime author of the Model Act, has been quoted as saying of Code § 109A-2—201: "[Y]ou can't enforce it beyond the quantity stated. You can be inaccurate about other things, price, for example, you can leave out." White and Summers, Uniform Commercial Code (1972), p. 52.

3. However, a contract which is otherwise insufficient may still be enforceable if the party against whom enforcement is sought admits by pleading or testimony that a contract of sale was in fact made. The defendant here, for himself individually and for his corporate enterprise, states by affidavit attached to his motion for summary judgment that he has a Chevrolet dealership, that Gary Jackson told him to order the vehicle involved in this lawsuit and that he agreed to do so and to notify him when it arrived; that he did order the vehicle and did notify him on arrival in April, 1978, the date of its delivery to the dealership. He further by deposition stated that his first knowledge of the existence of this model was when Jackson brought him the magazine article about it. The only difference of opinion between these litigants regarding the contract is that Meadows swears price was not discussed, whereas Jackson swears they agreed on a price of $150 over manufacturer's list. The "contract for sale," as to which the admission of the party may take the place of a writing, does not refer to a contract complete in all its terms, but to a transaction sufficient to stand as proof that the parties

did in fact enter into a contractual relationship. Cf. *Hagan v. Jockers*, 138 Ga. App. 847 (2) (228 SE2d 10) (1976). The admission that the parties agreed that Jackson would purchase a described automobile which Meadows would order for him, that Meadows did order it for him, and when it arrived, refused to close the deal, is sufficient to raise a jury issue, both as to part performance of the contract and as to agreed price. It was error to grant summary judgment to the defendant.

4. There is further evidence to the effect that when Meadows refused delivery of the vehicle for cost plus $150, Jackson stated he would pay him the sticker price, to which Meadows responded that would be unsatisfactory because he already had an offer of $4,500 over that price. We regard these remarks as statements with a view to compromise, which failed. They did not result in any withdrawal of a prior offer or in any new agreement, and accordingly do not constitute a defense to the action.

5. The individual and corporate defendant have brought counterclaims for damages for abuse of process, in that the action was wilfully and maliciously brought to force a sale of the vehicle in question at a sum less than its current market price, and was accompanied by threats of the use of political influence. Construed as an action for malicious use of process, the counterclaim will not lie prior to the successful termination of the main suit, and construed as an action for malicious abuse of process it must allege "that the plaintiff in a civil proceeding wilfully misapplied the process of the court in order to obtain an object which such a process was not intended by law to effect." *Dugas v. Darden*, 65 Ga. App. 394 (2), 396.(15 SE2d 901) (1941). As a suit for malicious use of process the counterclaim fails because the main action has not terminated. As a suit for abuse, it also fails because it appears that the main action rests on the plaintiff's construction of a contract which, if proved, would entitle him to specific performance which is the relief sought. The motion to dismiss the counterclaim was therefore erroneously denied.

*Judgment reversed. Shulman and Carley, JJ., concur.*

ARGUED OCTOBER 2, 1979 — DECIDED JANUARY 9, 1980.

*Andrew R. Kirschner, Fred Gleaton, Robert L. Todd,* for appellants.

*Tyron C. Elliott,* for appellees.